UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN S. PENROD,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 07-cv-02-JPG

# MEMORANDUM AND ORDER

This matter comes before the Court on petitioner John S. Penrod's ("Penrod") motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government has responded to the motion (Doc. 5).

## I. Background

In March 2003, Penrod was indicted on one count of conspiring to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (count 1) and four counts of distributing less than 5 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (counts 17, 18, 19 & 20). Penrod was represented at the trial level by attorney G. Ethan Skaggs ("Skaggs").

At trial, Penrod's codefendants Robert Barber, Lawrence Bryant and James Suggs, all of whom had pled guilty prior to trial, testified against Penrod. Penrod also took the stand in his own defense. Nevertheless, on August 20, 2003, a jury found Penrod guilty of all four charges and made a specific finding that Penrod conspired to distribute more than 50 grams of crack cocaine.

On January 30, 2004, the Court held a sentencing hearing at which Penrod objected to the relevant conduct finding recommended in the Presentence Investigation Report. The Court, relying on the evidence presented at trial, found by a preponderance of the evidence that Penrod's

relevant conduct was at least 500 grams but less than 1.5 kilograms of crack cocaine, which under United States Sentencing Guideline Manual[1] ("U.S.S.G.") § 2D1.1 yielded a base offense level of 36. The Court noted that the testimony of Robert Barber alone, who the Court found to be a credible witness regarding relevant conduct amounts, supported such a finding. The Court further found that Penrod had testified falsely at trial and therefore applied a two-point enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The Court declined to impose a two-point enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the commission of the crime, and declined to allow reductions under U.S.S.G. § 3B1.2 based on a minor role in the offense or under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a total offense level of 38. The Court further found that Penrod had accumulated 13 criminal history points, placing him into criminal history category VI. These findings yielded a guideline sentencing range of 360 months to life for count 1. Considering the statutory maximum sentence of 20 years for counts 17 through 20 as set forth in § 841(b)(1)(C), the sentencing range for those counts was 240 months. The Court sentenced Penrod to serve 384 months in prison on count 1 and 240 months in prison on each of counts 17 through 20, all sentences to be served concurrently.

Penrod appealed to the Seventh Circuit Court of Appeals, which issued a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir.), *cert. denied*, 546 U.S. 849 (2005), for the Court to determine whether it would have issued the same sentencing knowing that the Sentencing Guidelines were not mandatory. The Court found that it would, and Penrod's appeal continued. The Court of Appeals affirmed Penrod's conviction and sentence on October 3, 2005, and issued its mandate on October 25, 2005. *United States v. Penrod*, No. 04-1431, 2005 WL

---

[1] Unless otherwise noted, the references to the guidelines in this order are to the 2002 United States Sentencing Guidelines Manual.

2417069 (7th Cir. Oct. 3, 2005) (unpublished decision). Penrod did not file a petition for a writ of *certiorari* from the Supreme Court.

Penrod placed the pending § 2255 petition into the prison mail system to be sent to the Court for filing on December 28, 2006. Thus, under the mailbox rule of *Houston v. Lack*, 487 U.S. 266, 276 (1988), his petition satisfied the one-year limitations period imposed in § 2255.

In his § 2255 motion, Penrod asks the Court to vacate his conviction and sentence because his trial counsel was constitutionally ineffective in violation of his Sixth Amendment right to effective assistance of counsel. In response, the government argues that Skaggs was not deficient in his performance and that Penrod did not suffer any prejudice from Skaggs's performance.

**II.     § 2255 Standard**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

**III.    Analysis**

The Court finds that Penrod has not presented any evidence or argument meriting either a hearing or relief under § 2255. Penrod asks the Court to vacate his conviction because his counsel was constitutionally ineffective in failing to adequately challenge the witnesses whose testimony

3

provided the basis for the Court's relevant conduct finding. Penrod specifically points to the testimony of Robert Barber, Lawrence Bryant and James Suggs.

    A.    <u>Ineffective Assistance Standard</u>

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). The plaintiff's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Fountain*, 211 F.3d at 434 (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Id.* The Court cannot become a "Monday morning

quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

B. <u>Application to this Case</u>

The Court concentrates its analysis on the testimony of Robert Barber. His testimony alone provided the Court a sufficient basis for its relevant conduct finding. As a consequence, whether Skaggs was deficient in cross-examining or objecting to other witnesses could not have prejudiced Penrod's case, that is, his relevant conduct would still have been at least 500 grams but less than 1.5 kilograms of crack cocaine even if Skaggs had successfully impeached the other witnesses.[2]

The Court first looks at the ammunition Skaggs had to challenge Barber's testimony. In a post-arrest statement to law enforcement, Barber stated that Penrod sometimes made crack cocaine deliveries for Barber, who had been selling crack cocaine. In a later proffer interview to law enforcement agents, Barber relayed details of one trip Penrod made to St. Louis with Barber so that Barber could purchase crack cocaine. He further stated that Penrod never got quantities of crack cocaine directly from a supplier high up the chain but was instead a runner selling or

---

[2]Even if Barber's testimony alone would not have supported the Court's relevant conduct finding, the Court would find that Skaggs's performance was not deficient with respect to his cross-examination of Lawrence Bryant or James Suggs. To the extent that the prior statements of those witnesses were inconsistent with or omitted details of the witness's trial testimony, Skaggs highlighted that in his cross-examination. Penrod has not pointed to anything more Skaggs could have done to impeach those witnesses.

delivering drugs to drug users in a Mt. Vernon, Illinois, trailer park. In none of his interviews with law enforcement agents did Barber mention that Penrod had driven him to St. Louis to obtain crack cocaine multiple times or that he had fronted Penrod crack cocaine.

In contrast, at trial, Barber testified that Penrod drove him to St. Louis to obtain crack cocaine a majority of the more than 50 times he went for that purpose, and that on each trip Barber purchased about an ounce of crack cocaine. He also testified that Penrod helped him sell cocaine out of a co-defendant's trailer in Mt. Vernon, Illinois, and that on a few occasions he had fronted Penrod crack cocaine to sell to others. He also testified that for a time the crack cocaine distribution operation moved to Penrod's residence. This testimony was consistent with the testimony of other witnesses.

At trial, Skaggs used Barber's prior statements to impeach him. Specifically, he confronted Barber with, among other things, the fact that in Barber's multiple interviews with law enforcement agents he had not mentioned fronting Penrod crack cocaine or taking multiple trips to St. Louis with Penrod. Although it did not ultimately persuade the jury or the Court to discredit Barber's testimony, Skaggs's cross-examination was vigorous and was well within the range of reasonably competent performance. Penrod has not pointed out what more Skaggs could have done at sentencing to challenge Barber's testimony.

To the extent that Penrod may be faulting Skaggs for failing to object to what he might believe was the government's knowing use of false testimony, that argument also must fail. A prosecutor's knowing use of false testimony violates the due process clause. *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001); *Anderson v. United States*, 403 F.2d 451, 454 (7th Cir. 1968) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). In the context of a trial, "[w]hen the defendant argues that the government allegedly used perjured testimony, to warrant setting the

verdict aside and ordering a new trial, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a reasonable likelihood that the false testimony could have affected the judgment of the jury . . . . 'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'"*Shasteen*, 252 F.3d at 933 (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)).

In this case, Skaggs was not deficient for failing to object to Barber's, Bryant's or Suggs's testimony. Penrod has presented nothing but self-serving allegations that the testimony was false and has pointed to nothing from which Skaggs could have determined that the government knew the witnesses were not testifying truthfully such that he should have objected during the testimony. All Penrod has pointed to are inconsistencies between the witnesses's statements, their trial testimony and his own trial testimony. This is insufficient to find his counsel's performance deficient.

Furthermore, Penrod suffered no prejudice from Skaggs's failure to object to the testimony as perjury. Had Skaggs made such an objection, the Court would have overruled it and told Skaggs to explore the issue on cross-examination, which Skaggs ultimately did to no avail.

## IV. Conclusion

For these reasons, the Court rejects Penrod's ineffective assistance of counsel argument as a basis for § 2255 relief. Accordingly, the Court **DENIES** Penrod's § 2255 motion and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  December 12, 2007**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**